Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 6616 | DATE | 5/18/2000 |
| CASE TITLE | NEUMA, INC. vs. AMP, INC., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the claims Neuma asserts against AMP in Counts I, III, and IV of its first amended complaint, and AMP is entitled to judgment as a matter of law on these claims. AMP's motion for summary judgment on those claims is, therefore, granted, and Neuma's motion for summary judgment on Count I is denied. The Court declines to exercise its supplemental jurisdiction over the state law claim asserted in Count II, which is dismissed without prejudice to refiling in state court. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 22 2000 date docketed | 49 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 00 MAY 19 AM 9:36 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEUMA, INC.

    Plaintiff,

v.

AMP, INC., and PROVIDENT LIFE
& ACCIDENT INSURANCE CO.,

    Defendants.

No. 98 C 6616
Paul E. Plunkett, Senior Judge

## MEMORANDUM OPINION AND ORDER

Plaintiff Neuma, Inc. has sued AMP, Inc. for its alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., ("ERISA") and for negligent misrepresentation.[1] Neuma has filed a Federal Rule of Civil Procedure 56 motion for summary judgment solely on Count I of the first amended complaint. AMP has filed a motion for summary judgment on all claims. For the reasons set forth below, AMP's motion for summary judgment is granted as to the claims asserted in Counts I, III and IV of Neuma's first amended complaint, Neuma's motion for summary judgment on Count I is denied, and the Court declines to exercise supplemental jurisdiction over the state-law claim asserted in Count II, which is dismissed without prejudice to refiling in state court.

---

[1] Neuma's claims against Provident Life & Accident Insurance company were dismissed on November 16, 1999. (See 11/16/99 Minute Order.)

## Facts[2]

Stanley Scott Larsen was hired by AMP on March 31, 1987. (Def.'s Resp. Pl.'s Rule 56 Stmt. ¶ 3.)[3] During Larsen's tenure with the company, AMP offered group life insurance coverage to certain of its employees. (Pl.'s Rule 12(M) Stmt. ¶ 5.) During 1996 and 1997, the insurance was provided by Provident Life & Accident Insurance Company. (Id. ¶ 7.) On January 1, 1996, Larsen enrolled in AMP's life insurance program. (Id. ¶ 8.)

The Provident policy in effect when Larsen enrolled contains the following provision:

> If you become disabled before age 60, and while insured, [AMP] will keep your life insurance in force by paying the appropriate premium as long as you are disabled, provided proofs of disability are furnished as required. In no event, however, will such insurance be continued beyond the date the life insurance provisions of the Plan terminate

("the disability provision"). (Id., Ex. 4 at 19.) It also contains a reservation of rights clause that states:

> [AMP] reserves the right to terminate, suspend, withdraw, amend or modify the Plan at any time. Any such change or termination in benefits (a) will be based solely on the decision of [AMP] and (b) may apply to active employees, future retirees and current retirees as either separate groups or as one group.

(Id. at 9.)

On March 14, 1996, Larsen was placed on disability status by AMP. (Id. ¶ 15.) On September 5, 1996, Larsen assigned his rights to the group life insurance coverage to Neuma. (Id.

---

[2] As discussed below, each motion for summary judgment calls for a factual perspective that favors the non-movant. Because it turns out that AMP prevails and Neuma does not, however, the facts in this opinion represent a view favorable to Neuma.

[3] Effective September 1, 1999, Local General Rule 12 was renumbered LR 56.1. Though all of the briefing took place after that date, the parties have submitted some Rule 12 Statements and some LR 56.1 Statements. For clarity, we will refer to the various fact statements as the parties do.

2

¶ 9.) Pursuant to company policy, on March 14, 1997, one year after Larsen became disabled, he was terminated by AMP. (Id. ¶ 18.)

On December 31, 1997, AMP canceled its policy with Provident, ending Larsen's coverage. (Id. ¶ 21.) Effective January 1, 1998, AMP purchased group life insurance with MetLife Insurance Company. (Id. ¶ 23.) The coverage provided by MetLife was the same as that provided by Provident. (Id. ¶ 24.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., No. 99-221, 2000 WL 352422, at *4 (7th Cir. Apr. 6, 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-movant. Id.

## Discussion

### The Federal Claims

In Count I, Neuma seeks an order forcing AMP to provide life insurance to Larsen as it believes the AMP life insurance program required. The parties agree that the AMP life insurance

program in which Larsen enrolled was an employee benefit plan as defined by ERISA. 29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was . . . established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, [or] death . . . ."). But that is where their agreement ends. Neuma contends that the life insurance program was part of a larger employee benefit plan, the AMP AKZO Corporation Medical, Dental, Life Insurance Plan, and that the plan and AMP's obligation to pay premiums for Larsen's life insurance continued even though the Provident insurance policy did not. AMP, on the other hand, contends that the life insurance program was an employee benefit plan unto itself, the Group Life Benefits Plan, which was co-extensive with the Provident policy.

Neuma's interpretation is based primarily on the Annual Return/Reports of Employee Benefit Program that AMP filed with the Internal Revenue Service for plan years 1997 and 1998.[4] The 1997 Annual Return/Report states that the plan is the AMP AKZO Corporation Medical, Dental, Life Insurance Plan, that it is insured by Provident Life and Accident under Policy No. N-377, and that it was not terminated during 1996 or 1997. (Pl.'s Rule 12(M) Stmt., Ex. 5, Patchel Aff., Ex. A.) Similarly, the 1998 Annual Return/Report indicates that the plan is the AMP AZKO Corporation

---

[4] Neuma also claims that the affirmative answer given by AMP's 30(b)(6) witness to the question: "Did the insurance provisions of the Plan continue uninterrupted when MetLife was substituted for Provident?" (Pl.'s Rule 12(M) Stmt., Ex. 2 at 203), supports its interpretation. We disagree. Earlier in her deposition, AMP's 30(b)(6) witness said that she used the terms plan and policy interchangeably. (Id. at 73.) Read in this context, the testimony highlighted by Neuma simply supports the undisputed fact that AMP provided seamless life insurance coverage to its employees because the provisions of the MetLife policy were identical to those of the Provident policy.

4

Medical, Dental, Life Insurance Plan, that it is insured by Provident under Policy No. N-377, and that it was not terminated or amended during 1997 or 1998. (Id., Ex. B.)

Plainly, the 1998 Annual Return/Report is incorrect, at least to the extent that it identifies Provident as the plan insurer for 1998. The parties agree that the Provident policy expired at the end of 1997. (Pl.'s Rule 12(M) Stmt. ¶ 21; Def.'s Resp. Pl.'s Rule 56 Stmt. ¶ 21.) Thus, AMP could not have had any plan that was funded by Provident Policy No. N-377 during 1998. It may be that other aspects of these Annual Return/Reports are incorrect as well, but because AMP did not explain the discrepancies between these documents and the summary plan description, we cannot tell.

Fortunately, the outcome of these motions does not hinge on the accuracy of AMP's Annual Return/Reports. ERISA plans are governed by the documents that create them. 29 U.S.C. §§ 1102(a)(1) ("Every employee benefit plan must be . . . established and maintained pursuant to a written instrument . . . ."), 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan . . . ."). Consequently, an ERISA plan ends when the termination conditions in the plan documents are met, whether or not the sponsoring company accurately reports that fact to the IRS. The parties agree that the plan document in this case is the summary plan description of the life insurance program. (Pl.'s Rule 12(M) Stmt. ¶ 13; Def.'s Resp. Pl.'s Rule 56 Stmt. ¶ 13.) Thus, whether its name is the AMP AKZO Corporation Medical, Dental, Life Insurance Plan or the Group Life Benefits Plan, the plan that provided life insurance to Larsen is controlled by the summary plan description.

A review of that document establishes that Larsen is not owed any benefits. The summary plan description unambiguously makes the plan co-extensive with Provident Policy No. N-377. At the outset, it states: "PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY . . .

Certifies that it has issued Group Policy No. N-377 (herein called the Plan) to AMP CIRCUITS, AN AMP DIVISION." (Pl.'s Rule 12(M) Stmt., Ex. 4 at 5.) The reservation of rights provision expressly permits AMP to "terminate, suspend, withdraw, amend or modify the Plan at any time." (Id. at 9.) Moreover, the disability provision of the plan requires AMP to "keep [Larsen's] life insurance in force by paying the appropriate premium" only until "the life insurance provisions of the Plan terminate." (Id. at 19.) There is no dispute that the Provident policy ended on December 31, 1997. (Id. ¶ 21; Def.'s Resp. Pl.'s Rule 56 Stmt. ¶ 21.) Because the summary plan description explicitly equates the plan with the policy and gives AMP the unfettered right of termination, the plan and AMP's obligation to pay Larsen's insurance premiums also ended on December 31, 1997.

Even if the plan ended, Neuma argues, the reservation of rights provision precluded AMP from terminating the life insurance benefits of disabled employees. In full, that provision states:

> [AMP] reserves the right to terminate, suspend, withdraw, amend or modify the Plan at any time. Any such change or termination in benefits (a) will be based solely on the decision of [AMP] and (b) may apply to active employees, future retirees and current retirees as either separate groups or as one group.

(Pl.'s Rule 12(M) Stmt., Ex. 4 at 9.) In Neuma's view, that provision permitted AMP to terminate the benefits of active employees, future retirees and current retirees, but not disabled former employees. Once again, we disagree.

ERISA plans are contracts to which federal principles of contract interpretation apply. Diehl v. Twin Disc, Inc., 102 F.3d 301, 305 (7th Cir. 1996). "Federal common law rules of contract interpretation parallel equivalent state rules. We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience, and we construe ambiguities in ERISA plans against the drafter." Bullwinkel v. New England Mut. Life Ins. Co., 18 F.3d 429, 431 (7th Cir. 1994) (internal quotation marks and citation omitted). One of the established cannons of

6

contract construction is that "[c]ontracts are to be interpreted as a whole, giving meaning and effect to each provision of the contract." Arrow Master, Inc. v. Unique Forming, Ltd., 12 F.3d 709, 713 (7th Cir. 1993) (internal quotation marks and citation omitted). Neuma's interpretation of the reservation of rights provision violates that principle. If the reservation of rights provision prohibited AMP from ever terminating the benefits of disabled employees, as Neuma contends, it would nullify the disability provision, which requires AMP to pay Larsen's life insurance premiums only until "the life insurance provisions of the Plan terminate." (Pl.'s Rule 12(M) Stmt., Ex. 4 at 19.) In light of the disability provision, the more sensible interpretation of the reservation of rights is that AMP reserved the right to amend or terminate the Plan, even if the change impacted different groups of employees differently.

The Seventh Circuit's decision in Diehl does not compel a different result. The contested provision in that case was in a Shutdown Agreement negotiated by the company and the union after the company announced that it was closing one of its plants. The provision entitled certain retirees to lifetime insurance benefits "as provided . . . [in] Sections 5 and 6 of the Insurance Agreement." 102 F.3d at 302-03. Though not in the sections referenced, the Insurance Agreement included a reservation of rights that stated: "Your Employer hopes to continue the Plan indefinitely but, as with all group plans, the Plan may be changed or discontinued." Id. at 303. The company claimed that the reservation of rights provision of the Insurance Agreement was incorporated into the Shutdown Agreement, enabling the company to amend or terminate the promised lifetime benefits at anytime.

The Seventh Circuit disagreed. This was not, the court noted, a situation in which it was required to harmonize two ostensibly conflicting provisions of the same document. Rather, it was interpreting "an independent contract, supported by separate consideration" that was "capable of

modifying or supplanting" the Insurance Agreement that was executed three years before. Id. at 306-07. Whatever right the Insurance Agreement gave the company to terminate benefits, the court held, was abrogated by its subsequent promise in the Shutdown Agreement to provide lifetime benefits to the retirees. Id. at 307.

This case differs from Diehl in two key respects. First, we are interpreting the provisions of one contract, not two separate and independent agreements. Thus, we must read all of the contractual provisions "as parts of an integrated whole." Id. Second, and more important, unlike the provision at issue in Diehl, the disability provision in this case explicitly conditions lifetime benefits on the continuation of the plan. We will not, in the face of this unambiguous language, contort the other provisions of the contract to create an ambiguity where none exists.

In short, the plain language of the plan absolved AMP of the obligation to pay Larsen's life insurance premiums after the Plan ended on December 31, 1997. AMP's motion for summary judgment on Count I is, therefore, granted.

In Count III, Neuma seeks to recover damages for AMP's alleged breaches of its fiduciary duties. This claim suffers from a flaw that neither party addresses: ERISA does not permit plan participants to recover damages for breaches of fiduciary duty. ERISA makes "[a]ny person who is a fiduciary with respect to a plan who breaches any of [his] responsibilities, obligations or duties . . . personally liable to make good *to such plan* any losses to the plan resulting from each such breach." 29 U.S.C. 1109(a) (emphasis added). In Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), the Supreme Court held that section 1109(a) means just what it says: any recovery for breach of fiduciary duty goes to the plan not to individual participants. Id. at 140. Neuma is

seeking to recover damages for itself, not for the plan. Therefore, it cannot sustain a section 1109(a) breach of fiduciary duty claim.

The statute contains another avenue for relief for breach of fiduciary duty, but it is closed to Neuma as well. Section 1132(a)(3) permits plan participants to sue "to obtain other appropriate equitable relief" to redress violations, or enforce provisions, of ERISA. The Supreme Court has made clear, however, that "appropriate equitable relief" does not include compensatory damages or other monetary relief. Mertens v. Hewitt Assocs., 508 U.S. 248, 255-59 (1993). Because monetary relief is the only thing Neuma seeks in Count III, its breach of fiduciary duty claim must be dismissed.

In Count IV, Neuma seeks to recover penalties under section 1132(c) for AMP's alleged failure to produce to it certain plan documents. That section requires plan administrators to provide information to participants or beneficiaries within thirty days of their request or risk liability for statutory penalties. Viewed in the light most favorable to Neuma, the record shows that it first requested plan information from AMP on August 6, 1998. (Pl.'s Resp. Def.'s Rule 12(M) Stmt. ¶ 58.) AMP argues that it is entitled to summary judgment on this claim because Neuma was not a plan participant or beneficiary on that date.

Neuma concedes that it did not meet the definition of a plan participant in August 1998, see 29 U.S.C. § 1002(7), but argues that it was a plan beneficiary. We disagree. "ERISA defines a 'beneficiary' as 'a person designated by a participant . . . who is or may become entitled to a benefit' under the plan." Kennedy v. Connecticut Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991) (quoting 29 U.S.C. § 1002(8)). There is no dispute that Larsen designated Neuma as the recipient of his life insurance benefits. The question is whether on August 6, 1998 Neuma was, or may have

become, entitled to benefits. The answer is no, unless Neuma had a "colorable claim that . . . [it would] prevail in a suit for benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989).

It did not. As we discussed above, the only plan document, the summary plan description, unambiguously equates the Provident policy with the plan. Moreover, the plain language of the disability provision conditions AMP's obligation to pay Larsen's insurance premiums on continuation of the plan. The policy, the plan and AMP's obligation to pay Larsen's premiums ended on December 31, 1997. The language of the plan is not subject to reasonable debate. Because Neuma did not have a colorable claim for benefits when it requested plan information from AMP in August 1998, AMP had no duty to provide it. AMP's motion for summary judgment on the claim in Count IV is granted.

### **The State Claim**

In Count II Neuma asserts a state-law negligent misrepresentation claim. Because we have dismissed the federal claims in this suit, we decline to exercise supplemental jurisdiction over this state law claim. See 28 U.S.C. § 1367(c)(3). Accordingly, the negligent misrepresentation claim is dismissed without prejudice to refiling in state court.

### **Conclusion**

For the reasons stated above, there is no genuine issue of material fact on the claims Neuma asserts against AMP in Counts I, III and IV of its first amended complaint, and AMP is entitled to judgment as a matter of law on these claims. AMP's motion for summary judgment on those claims

is, therefore, granted, and Neuma's motion for summary judgment on Count I is denied. The Court declines to exercise its supplemental jurisdiction over the state law claim asserted in Count II, which is dismissed without prejudice to refiling in state court. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: *May 18, 2000*