# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 6616 | **DATE** | 2/20/2002 |
| **CASE TITLE** | NEUMA, INC. vs. AMP, INC., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER:** Plaintiff's motion for summary judgment is granted and defendant AMP's motion for summary judgment is granted in part and denied in part. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| ✓ | Copy to judge/magistrate judge. | |

TBK — courtroom deputy's initials

FEB 22 2002 — date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

U.S. DISTRICT COURT CLERK

02 FEB 21 PM 2:41

FILED-ED 10

Date/time received in central Clerk's Office

Document Number 71

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **NEUMA, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 98 C 6616** |
| **AMP, INC., and PROVIDENT LIFE** | ) | **Paul E. Plunkett, Senior Judge** |
| **& ACCIDENT INSURANCE CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

DOCKETED
FEB 2 2 2002

## MEMORANDUM OPINION AND ORDER

The case is before the Court on remand from the Seventh Circuit, which instructed us to: (1) determine whether statutory fines should be assessed against AMP for its alleged failure to comply with Neuma's requests for plan documents (Count IV of Neuma's First Amended Complaint) and (2) determine whether AMP is liable under state law for negligent misrepresentation (Count II). Neuma, Inc. v. Amp, Inc., 259 F.3d 864, 881 (7th Cir. 2001). Neuma has submitted a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment on Count IV. AMP has submitted a Rule 56(c) motion for summary judgment on both claims. For the reasons set forth below, Neuma's motion for summary judgment is granted and AMP's motion for summary judgment is granted in part and denied in part.

## Facts

Stanley Scott Larsen was hired by AMP on March 31, 1987. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 2.)[1] During Larsen's tenure with the company, AMP offered group life insurance coverage to certain of its employees. (Id. ¶ 3.) During 1996 and 1997, the insurance was provided by Provident Life & Accident Insurance Company. (Id. ¶ 6.) On January 1, 1996, Larsen enrolled in AMP's life insurance program. (Id. ¶ 7.) The face amount of his coverage was $81,600.00 (AMP's Rule 56(i) Stmt. Uncontested Material Facts, Ex. 11 at D00130.)

On August 7, 1996, Neuma sent a two-page questionnaire to AMP, requesting information about Larsen's life insurance. (Id. at D00130-31.) AMP faxed the completed questionnaire to Neuma on September 4, 1996. (Id. at D00129.) On September 5, 1996, Neuma and Larsen entered into an agreement in which Larsen agreed to assign his rights to the life insurance coverage to Neuma for $61,200.00. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 8; Pl.'s Resp. AMP's Local Rule 12(m) Stmt. Uncontested Material Facts ¶ 47.)

On August 6, 1998, Neuma says it sent a letter to AMP requesting various life insurance plan documents. (Pl.'s Local Rule 56.1(a)(3) Stmt. ¶ 11.) AMP says it did not receive that letter until December 10, 1998. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 11.) There is no dispute that on December 10, 1998, Jacqueline Mooneyhan, AMP's Human Resources Manager, responded to Neuma's request by sending only one document, an outdated summary plan description for the life insurance plan, to Neuma's counsel. (Id. ¶ 15.)

---

[1]Because of the procedural posture of this case, the facts are drawn from the fact statements the parties submitted in connection with the summary judgment motions they filed in 2000 as well as from the fact statements they submitted in connection with Neuma's post-appeal summary judgment motion. Each fact statement has a different, and sometimes, incorrect, title. To reduce confusion, we will cite to each fact statement by its title, regardless of its accuracy.

Because AMP's initial production was incomplete, on January 19, 1999, Neuma renewed its request to AMP for plan documents. (Id. ¶ 16.) According to Neuma, on February 17, 1999, AMP sent it "a summary plan description for employees of 'AMP Circuits, an AMP Division,' incomplete group life insurance policy documents and a single unsigned plan amendment." (Pl.'s Local Rule 56.1(a)(3) Stmt. ¶ 17.) About a month later, Neuma says, AMP sent it two more plan amendments and an endorsement to the group life policy, none of which was included in the February mailing. (Id. ¶ 18.) AMP says that its February production was substantially complete and that it produced only one additional, relevant document in April. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶¶ 17, 18.)

On September 17, 1999, during the pendency of this litigation, Neuma requested copies of the annual return/report for the life insurance plan for the years 1997 and 1998 from AMP. (Id. ¶ 19.) AMP produced incomplete and unsigned copies of the reports on November 12, 1999, pursuant to court order. (Id. ¶¶ 23, 24.) On December 9, 1999, AMP gave complete, signed copies of the reports to Neuma. (Id. ¶ 25.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls

of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

In Count II, Neuma asserts a claim for negligent misrepresentation. As a general rule, economic losses – the only kind of damage Neuma suffered – are not recoverable in tort actions in Illinois. That rule, which was announced by the Illinois Supreme Court in Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443 (Ill. 1982), prevents parties from seeking tort remedies for economic losses stemming from contractual breaches. Id. at 450. The Moorman court said, however, that the rule did not apply when the plaintiff's economic loss was caused by the negligent misrepresentation of a defendant "who is in the business of supplying information for the guidance of others in their business transactions." Id. at 452. Because it is not in the business of supplying information, AMP says that Moorman bars the negligent misrepresentation claim Neuma asserts against it.

We disagree. The Moorman doctrine applies only when the duty allegedly breached is grounded in a contract. See Congregation of the Passion v. Touche Ross & Co., 636 N.E.2d 503, 513 (Ill. 1994) ("Where the duty of a seller has traditionally been defined by contract, therefore, *Moorman* dictates that the theory of recovery should be limited to contract although recovery in tort would be available under traditional tort theories."). However, when the alleged "duty arises outside of [a] contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." Id. at 514. AMP's duty to provide accurate information to Neuma, to the extent it had

4

one,[2] was not grounded in a contract. Because Neuma's economic loss stems from an alleged breach of a duty that is independent of a contract, the Moorman doctrine does not bar its negligent misrepresentation claim.

To prevail on its negligent misrepresentation claim, Neuma must prove that: (1) AMP made a false statement of material fact; (2) AMP was careless or negligent in ascertaining the truth of the statement; (3) AMP intended to induce Neuma to act on the statement; (3) Neuma acted in reasonable reliance on the truth of the statement and was damaged; and (4) AMP had a duty to communicate accurate information to Neuma. Quinn v. McGraw-Hill Cos., 168 F.3d 331, 335-36 (7th Cir. 1999) (citing Board of Educ. v. A. C & S. Inc., 546 N.E.2d 580, 591, 593 (Ill. 1989)). Reasonable reliance, our court of appeals has emphasized, is critical. Id. at 336. If "no reasonable jury could find that [Neuma] reasonably relied on [AMP's statement]," Neuma's claim must be dismissed. Id. (affirming district court's 12(b)(6) dismissal of negligent misrepresentation claim because plaintiff's reliance was unreasonable as a matter of law).

Neuma's claim is based on the statements AMP made on the questionnaire Neuma submitted to it before entering into the assignment agreement with Larsen. Neuma says that the following statements made by AMP were misleading or false: (1) "the amount of Larsen's life insurance coverage was $81,600.00" (First Am. Compl. ¶ 29); (2) "the amount of insurance could decrease only based on salary" (id.); (3) "in the event of coverage termination, conversion to an individual policy was available," which implied there was no limit on such conversions (id.); (4) disability premium waiver was not available on Larsen's policy (Pl.'s Reply Mem. Supp. Mot. Summ. J & Resp. Mem. Opp'n AMP's Cross-Mot. Summ. J. at 10); and (5) Larsen was on long-term disability

---

[2]Because the parties assume that such a duty exists, the Court does the same.

on September 4, 1996, the date AMP completed the questionnaire (id.). Even if some of the statements AMP made on the questionnaire were false, and AMP admits that two of them were (see AMP's LR 56(i) Stmt. Uncontested Material Facts ¶¶ 24-25 (establishing that Larsen was on short-term disability when questionnaire was completed); id., Ex. 4, Mooneyhan Dep. at 169 (admitting that disability premium waiver was available on Larsen's policy)), Neuma cannot satisfy the reasonable reliance element of its claim.

The questionnaire Neuma submitted to AMP is a pre-printed form that contains twenty-nine brief questions, like "Type of life insurance coverage" and "Face amount of certificate." (See id., Ex. 11, D00130-31, Questions 1 & 2.) Each question is followed by a small space or line for an answer. (Id.) Though AMP provided the information requested, the completed questionnaire raised as many questions as it answered. AMP stated, for example, that the face amount of Larsen's coverage was "$40,800 – Basic plus $40,800 Optional Life." (Id. at D00130.) AMP did not say, however, whether there was a difference between the two kinds of coverage or whether both were subject to the same terms and conditions. AMP also said that the amount of Larsen's coverage could decrease "based on salary." (Id.) But it did not say which kind of coverage was tied to Larsen's salary. The questionnaire also said that Larsen was on long-term disability. (Id.) But it did not indicate whether Larsen's salary, and therefore, the amount of his insurance coverage, had decreased when he went on disability. In addition, AMP said that disability premium waiver was not available on the policy and that the premiums could not be paid by a third party. (Id. at D00130-31.) Did that mean Larsen was paying the premiums while on disability? Would he have to continue doing so even after he assigned the benefits to Neuma? Finally, AMP said that Larsen could lose coverage if the policy was terminated and that he could convert his coverage to an individual policy. (Id. at

6

D00131.) But AMP did not say whether there were any limitations or conditions on the power to terminate or the right to convert.

AMP faxed the completed questionnaire to Neuma on September 4, 1996. (Id. at D00129.) Despite the patent ambiguities in it, Neuma did not ask AMP for any clarification. Instead, the next day, Neuma "entered into a binding written contract with Larsen to designate [Neuma as his] absolute assignee . . . [for] the sum of $61,200.00." (Pl.'s Resp. AMP's Local Rule 12(M) Stmt. Uncontested Material Facts ¶ 47.) At no time before entering into that contract with Larsen did Neuma request a copy of the Provident policy or the summary plan description from AMP, discuss with AMP its answers to the questionnaire, or ask AMP any follow-up questions. (See AMP's Rule 56(i) Stmt. Uncontested Material Facts, Ex. 2, Paradise Dep. at 19, 21-22, 34-39, 60.) Instead, Neuma agreed to pay Larsen $61,200.00 based on AMP's terse answers to a few equally terse questions on a pre-printed form. It may be, as unlikely as it seems, that such haphazard investigation is the norm in the viatical settlement industry. But Neuma, with whom the burden rests, has produced no such evidence. Because there is no evidence from which a reasonable jury could conclude that Neuma reasonably relied on AMP's questionnaire answers in deciding to purchase Larsen's life insurance benefits, AMP is entitled to judgment as a matter of law on the negligent misrepresentation claim Neuma asserts against it.

We turn now to Count IV. In that count, Neuma seeks to recover penalties under 29 U.S.C. § ("section")1132(c) for AMP's alleged failure to produce to it certain plan documents. That section requires plan administrators to provide certain information, including summary plan descriptions and annual return/reports, to participants or beneficiaries within thirty days of their request or risk liability for statutory penalties. It is undisputed that AMP was designated as the administrator of the

life insurance plan in the plan documents. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 5.) Moreover,

at the time Neuma requested the plan documents, it was a plan beneficiary. Neuma, Inc. v. AMP,

Inc., 25 F.3d 864, 879 (7th Cir. 2001). Neuma's requests for plan documents on August 6, 1998 and

September 17, 1999 were, therefore, covered by section 1132(c). There is no dispute that AMP did

not comply with either of Neuma's requests for information within the thirty-day period allotted by

the statute. Thus, Neuma is entitled to summary judgment on its claim that AMP violated section

1132(c).

The next question is whether penalties should be assessed against AMP for its violations of

the statute. The determination of whether to impose penalties is left to the sound discretion of the

Court. 29 U.S.C. § 1132(c). Among the factors courts have considered in making penalty

determinations are "bad faith or intentional conduct on the part of the administrator, the length of

the delay, the number of requests made and documents withheld, and the existence of any prejudice

to the participant or beneficiary." Pagovich v. Moskowitz, 865 F. Supp. 130, 137 (S.D.N.Y. 1994);

see Ziaee v. Vest, 916 F.2d 1204, 1210 (7th Cir. 1990) (stating that court may consider prejudice in

determining whether to impose penalty). We will review these factors with respect to each of

AMP's violations of the statute.

According to Neuma, its first request for plan documents was sent to AMP on August 6,

1998. (Pl.'s Local Rule 56.1(a)(3) Stmt. ¶ 11.) Though it was correctly addressed, AMP says it did

not receive that letter until its lawyers gave it a copy on December 10, 1998. (See Def.'s Resp. Pl.'s

Rule 56.1(a)(3) Stmt. ¶ 11; id., Ex. A, 12/10/98 Letter to Lichtenstein from Mooneyhan; id., Ex. B,

Mooneyhan Dep. at 152-54.) The law presumes that "a letter [that was] properly directed [and]

placed in a post office . . . reached its destination in usual time and was actually received by the

person to whom it was addressed. <u>Hagner v. United States</u>, 285 U.S. 427, 430 (1932). To invoke this presumption, however, Neuma must prove that the letter was properly addressed, stamped and mailed. <u>In re East Coast Brokers and Packers, Inc.</u>, 961 F.2d 1543, 1545 (11th Cir. 1992). Though Neuma has established the first element, it has offered no evidence on the last two. It cannot, therefore, invoke the presumption. Absent the presumption, and in the face of AMP's denial, Neuma has not proven that AMP received its first request for documents in August 1998. Consequently, we will measure AMP's delay in complying with this request from December 10, 1998, the date AMP says it was received.

Having determined the date the request was received, we must now determine the date it was fulfilled. The parties agree that AMP's first production in response to this request, which it made on December 10, 1998, was incomplete. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 15 (admitting that AMP sent the wrong summary plan description to Neuma on December 10, 1998).) But AMP says that it fully complied with Neuma's request by February 17, 1999. (<u>Id.</u> ¶¶ 17, 18.) Neuma claims that AMP's February production of plan documents was also incomplete. Though Neuma admits that AMP sent it the correct summary plan description on that date, it claims that AMP did not send all of the insurance policy documents it had requested until April. (Pl.'s Local Rule 56.1(a)(3) Stmt. ¶¶ 17, 18.) The record, once it is untangled, supports AMP.

Attached as Exhibit 9 to Neuma's fact statement is, according to its counsel, a "true and correct copy of AMP's counsel's February 17, 1999 correspondence . . . including all enclosures . . . ." (<u>Id.</u>, Ex. 19, Fishman Aff., ¶ 5.) The first page of Exhibit 9 is the letter itself, which states, in relevant part: "Enclosed please find copies of plan documents . . . bearing the Bates-Stamped numbers D00001 through D00046." (<u>Id.</u>, Ex. 9.) Exhibit 9, however, contains only documents

D00001 through 00036. Given these facts, it is logical to assume that documents D00037 through D00046 are the insurance policy documents that Neuma claims were omitted from AMP's February 1999 production.

That is the logical conclusion, but the record establishes that it is wrong. The insurance policy documents appear at the beginning of AMP's February 1999 production and are stamped D00001 through D00012. (See id.) The pages missing from Neuma's Exhibit 9, as AMP's exhibits establish, are not insurance policy documents, but a portion of the summary plan description for the life insurance program AMP offered to employees in its QLP Laminates Division. (See Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt., Ex. C, D00029-D00046.) Neuma does not claim that these documents were withheld. Thus, we assume, as AMP's cover letter indicates, that they were produced in February 1999, and that – despite its counsel's attestation to the contrary – Neuma inadvertently omitted them from its Exhibit 9.[3]

A review of the record reveals that there is only one document related to the insurance policy that AMP produced in April 1999 that it had not produced in February 1999: a signed copy of a 1997 policy amendment reflecting AMP's name change. (Compare Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt., Ex. C with id., Ex. D.)[4] Moreover, the signatures were the only thing Neuma did

_____

[3]That conclusion is reinforced by the fact that Exhibit 9 is, at least in the Court's copy, attached upside down and backwards to Neuma's fact statement.

[4]For reasons that are not clear, in April AMP also gave Neuma two amendments to Provident Insurance Policy Nos. Z-206 and Z-206-ASO, policies that are not at issue in this suit. (See Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt., Ex. D, D00058-60; Pl.'s Local Rule 56.1(a)(3) Stmt. ¶¶ 6, 7 (asserting that AMP provided life insurance benefits to Larsen under Provident Group Policy No. N-377).)

not see until April, as AMP included an unsigned copy of the amendment in its February production. (See Pl.'s Local Rule 56.1(a)(3) Stmt., Ex. 9, D0001.)

In short, the record establishes that AMP substantially complied with Neuma's first request for documents on February 17, 1999. That means it took AMP 69 days, from December 10, 1998 until February 17, 1999, to comply with Neuma's first request.

Next, we turn to the question of bad faith. The record does not suggest that AMP deliberately or intentionally withheld the requested documents from AMP. But it does suggest that AMP was inattentive to Neuma's request. AMP first response to the request in December 1998, which AMP knew Neuma had made months before, was to send the wrong version of only one of the documents requested. This unsatisfactory response prompted Neuma to make a follow-up request in January 1999. This time AMP fully complied, but it let another thirty days elapse before doing so. These circumstances do not rise to the level of bad faith, but they also do not demonstrate much of an effort on AMP's part to comply with its ERISA obligations in a timely manner.

Finally, we consider whether Neuma was prejudiced by AMP's delay in responding to its first request. It was not. Larsen, from whom Neuma's rights to the life insurance benefits derived, ceased to be a plan participant at the end of 1997, nearly a year before AMP received Neuma's first request for documents. See Neuma, 259 F.3d at 877. Thus, AMP's delay in responding to Neuma's request, though not laudable, did not detrimentally affect Neuma.

On balance, the circumstances surrounding AMP's response to Neuma's first request for documents justify the assessment of a penalty, but not a large one. Though AMP should have been more diligent, there is no evidence that it intentionally withheld the requested documents. Moreover, though AMP took 39 days more to provide the requested information than the statute allows, that

11

delay did not adversely impact Neuma. Accordingly, the Court finds that a per diem penalty of $25.00, a total penalty of $975.00, is adequate in this instance.

We turn now to Neuma's second request for documents. There is no dispute that Neuma made the request, for the plan's 1997 and 1998 annual return/reports, on September 17, 1999. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶ 19.) Initially, AMP agreed to produce the documents. (See Pl.'s Local Rule 56.1 (a)(3) Stmt., Ex. 11, 9/17/99 Letter to Keating from Fishman at 1.) When Neuma moved to compel production of those documents, however, AMP argued that the documents were irrelevant and that, in any event, the forms were no longer in its custody. (Id., Ex. 14, AMP's Mot. Deny Neuma's Mot. Compel Produc. & Protective Order ¶¶ 3, 5.) Magistrate Judge Levin granted Neuma's motion and ordered AMP to produce the documents by November 12, 1999. (Id., Ex. 15, 10/15/99 Docket Entry.) Despite the court order, there is no dispute that AMP did not fully comply with Neuma's request until December 9, 1999, 53 days late. (Def.'s Resp. Pl.'s Rule 56.1(a)(3) Stmt. ¶¶ 24, 25.)

The circumstances surrounding this request, unlike those surrounding the first, justify the award of a more substantial penalty. AMP's behavior in this instance smacks of bad faith. ERISA requires plan administrators to produce annual return/reports to participants and beneficiaries upon request, whether or not those documents are currently in their custody or relevant to pending litigation. 29 U.S.C. § 1024. AMP's refusal to produce the documents until a judge ordered it to do so and its subsequent failure to produce them by the date the court ordered were completely unjustified. It is this kind of behavior that the statute was designed to prevent. However, in view of the fact that the delay was relatively short, and Neuma was not prejudiced by it, the maximum

12

penalty would not be appropriate. On balance, the Court finds that a per diem penalty of $80.00, a total penalty of $4240.00, is sufficient in this case.

## Conclusion

For the reasons stated above, there is no genuine issue of material fact on the claim Neuma asserts against AMP in Count II of its first amended complaint for negligent misrepresentation, and AMP is entitled to judgment as a matter of law on that claim. AMP's motion for summary judgment on that claim is, therefore, granted. There is also no genuine issue of material fact on the claim Neuma asserts against AMP in Count IV of its first amended complaint for violation of 29 U.S.C. § 1132(c), and Neuma is entitled to judgment as a matter of law on that claim. Neuma's motion for summary judgment is, therefore, granted and the Court awards it $5215.00 in statutory penalties on that claim. AMP's motion for summary judgment on Count IV is denied. This is a final and appealable order.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** _2-20-02_